UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

PABLO S. QUESADA, on behalf of himself            **CLASS ACTION**
and all others similarly situated,                **JURY DEMAND**

       Plaintiff(s),

v.

JAGUAR LAND ROVER NORTH AMERICA,
LLC,

       Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Pablo S. Quesada files this class action complaint on behalf of himself and all others similarly situated against Defendant Jaguar Land Rover North America, LLC ("Jaguar"), and alleges:

## I. NATURE OF THE CASE

1.    Plaintiff brings this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of himself and all similarly situated individuals and entities (the "Class") who own, lease or have owned or have leased model year 2016 or 2017 Jaguar XE, Jaguar XF, Jaguar XJ or Jaguar F-Pace vehicles (hereinafter, collectively, the "Vehicles") manufactured and/or sold by Jaguar.

2.    All of the claims asserted herein arise out of Jaguar's design, manufacture, and warranting of the Vehicles, as well as Jaguar's advertising, promoting, marketing, distributing, selling and leasing of the Vehicles as one of the most dependable, safe, and reliable vehicles available.

3.      One of the features of each Vehicle is the multimedia and navigation system (commonly referred to as the "Infotainment System") that features a touchscreen with touch and swipe controls for the operation of key vehicle functions including navigation, music, phone, climate and driver assistance systems.

4.      The Vehicles are designed and manufactured with uniform and inherent design defects in the Infotainment Systems that cause one or more of the key vehicle functions to fail and renders them unusable ("Defect").

5.      As a result of the Defect, the Infotainment System and key vehicle functions fail to operate or function as designed.  These resulting Vehicle failures from the Defect include, without limitation, failure of the Infotainment System screen to appear on Vehicle start-up, rear camera failing to appear or to function as designed, front parking sensors failing to activate as designed, freezing of satellite radio, failure to recognize USB media, intermittent Bluetooth connectivity and Infotainment System remaining powered after Vehicle shutdown.

6.      Notwithstanding being afforded opportunities to correct the Defect, Jaguar has failed to correct the Defect. The Defect has required the Vehicles to undergo numerous service calls, attempted repairs, and upgrades, all of which have failed to correct the Defect.

7.      Jaguar knew, or reasonably should have known, at or before the time it sold the first unit, that the Vehicles contained the Defect and that the Infotainment System, and key vehicle functions, would not function and would be rendered unusable as a direct result of the Defect.   Jaguar had sole and exclusive possession of this

2

knowledge at or before the time it sold the first unit, and continues to remain in sole and exclusive possession of virtually all information regarding the Defect.

8.     Notwithstanding this knowledge, Jaguar misrepresented that the Vehicles were reliable and free from defects, which Jaguar knew to be untrue, both at the time of sale or lease and on an ongoing basis.

9.     Jaguar also concealed and failed to disclose the Defect, both at the time of sale or lease of the Vehicles and on an ongoing basis.

10.     At all times, Jaguar made written misrepresentations, concealed, and/or failed to disclose to Plaintiff, the other members of the Class and all others in the chain of distribution, the Defect, and failed to remove the Vehicles from the marketplace or take appropriate remedial action.  Instead, Jaguar sold and serviced the Vehicles, and continues to sell and service the Vehicles, even though it knows and knew, or was reckless in not knowing, that the Vehicles contained the Defect, and that such failure would ultimately result in the inability of Plaintiff and the other members of the Class to use the Infotainment System, and key vehicle functions, of their Vehicles for the intended purpose during the time Plaintiff and the other members of the Class reasonably expected they would have use of such feature.

11.     Jaguar also omitted material information regarding the Defect from its marketing, advertising, sale and lease of the Vehicles.

12.     At all times, Jaguar failed to disclose to  Plaintiff and the other members of the Class, and all others in the chain of distribution, the existence of the Defect and failed to remove the Vehicles from the marketplace or take appropriate remedial action.

Instead, Jaguar sold and serviced the Vehicles, and continues to sell and service the Vehicles, even though it knows and knew, or was reckless in not knowing, that the Vehicles contained the Defect, and that such Defect would ultimately result in the inability of Plaintiff and the other members of the Class to use the Infotainment System, and key vehicle functions, of their Vehicles for their intended purpose during the time Plaintiff and the other members of the Class reasonably expected they would have use of their Vehicles.

13.     The Defect has caused the Infotainment System, and key vehicle functions, to not function, whether within or outside of the applicable warranty periods. Attempted repairs to Plaintiff's vehicle have continually failed.

14.      Many other owners and lessees of the Vehicles have complained in public forums and to Jaguar dealerships about the Defect and the specific problems it causes, and have requested that Jaguar address and remedy the Defect.

15.     As a direct and proximate consequence of Jaguar's false and misleading statements, and active and ongoing concealment and omission of the Defect, Plaintiff and the other members of the Class purchased, leased, and currently own or lease defective vehicles and have incurred damages thereby.

16.     Had Plaintiff and other members of the Class known of the Defect at the time of purchase or lease, they would not have bought or leased their vehicles, or would have paid substantially less for them.

17.     Plaintiff seeks actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to Plaintiff and the Class.

## II.     PARTIES

18.     Plaintiff Pablo S. Quesada is a Florida citizen who resides in Davie, Broward County, Florida who leased a 2016 Jaguar XF with a Defect.

19.     Defendant Jaguar Land Rover North America, LLC, is a limited liability company, organized and in existence under the laws of the state of New Jersey.  Jaguar's corporate headquarters are located at 555 MacArthur Blvd., Mahwah, New Jersey. Jaguar is the distributor and warrantor of the Vehicles in the United States.

20.     Plaintiff and the Class have suffered an ascertainable loss as a result of the Defendant's misrepresentations associated with the Defect, including, but not limited to, diminished value of the Vehicles.

21.     Plaintiff and the Class have suffered an ascertainable loss as a result of the Defendant's omissions associated with the Defect, including but not limited to diminished value of the Vehicles that failed to function as advertised.

22.     Were Plaintiff and the other members of the Class aware of the misrepresentations, concealments, failures to disclose and omissions described herein, they would not have purchased or leased their Vehicles or would have paid significantly less for them.

### III.    JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), because the amount in controversy exceeds $5 million and diversity exists between Plaintiff and Defendant. Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

24.    This Court also has personal jurisdiction over Defendant because Defendant conducts substantial business in Florida and has had systematic and continuous contacts with Florida, and has agents and representatives that can be found in this State.

25.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims set forth herein occurred and emanated from this district, and Defendant's conduct has injured members of the Class residing in this district. Accordingly, this Court has jurisdiction over this action, and venue is proper in this judicial district.

26.    All conditions precedent to bringing this action have been complied with, waived, excused, or otherwise met.

### IV.    TOLLING OF STATUTE OF LIMITATIONS

27.    Any applicable statute(s) of limitations has been tolled by Jaguar's knowing and active concealment and denial of the facts alleged herein. Despite their due

diligence, Plaintiff and the other members of the Class could not have reasonably discovered the Defect until shortly before this class action litigation was commenced.

28.     Jaguar was and remains under a continuing duty to disclose to Plaintiff and the other members of the Class the true character, quality and nature of the Defect, that the Defect will require costly repairs and that the Defect diminishes the value of the Vehicles.   As a result of the active concealment by Jaguar, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

29.     Moreover, because the Defect could not be detected due to Jaguar's purposeful fraudulent concealment, Plaintiff and the other members of the Class were not reasonably able to discover the Defect until long after purchasing or leasing the Vehicles, despite their exercise of due diligence. Thus, the discovery rule is applicable to the claims asserted by Plaintiff and the other members of the Class.   Any applicable statute of limitation has therefore been tolled by Jaguar's knowing, active concealment and denial of the facts alleged herein.   Jaguar is estopped from relying on any statutes of limitation because of its concealment of the Defect

### V. <u>FACTUAL ALLEGATIONS</u>

### A.     <u>The Vehicle and The Defect</u>

30.     All Vehicles come equipped with an Infotainment System that controls the operation of key vehicle functions including navigation, music, phone, climate and driver assistance systems.

31.     Jaguar designed, manufactured, warranted, promoted, marketed, distributed, sold, and leased the Vehicles.  Jaguar sold and leased thousands of Vehicles in Florida and nationwide, directly or indirectly, through dealers and other retail outlets.

32.     Jaguar brought the Vehicles to market between 2015 and the present, and continued selling and leasing them to members of the Class without disclosing the existence, nature, or scope of the Defect.

33.     Jaguar made misrepresentations to Plaintiff and the other members of the Class prior to the sale or lease of the Vehicles regarding the functionality of the Infotainment Systems of the Vehicles.  Jaguar also misrepresented to Plaintiff and the other members of the Class the existence of the Defect.

34.     Jaguar also concealed, failed to disclose and/or omitted to inform Plaintiff and the other members of the Class the existence of the Defect despite their knowledge of it and that the Defect would cause the Infotainment System, and key vehicle functions operated thereby, to malfunction.

35.     Accordingly, the Vehicles contain a uniform design defect.

36.     Despite Jaguar's knowledge of the Defect in 2015, they failed to notify owners and lessees of the Vehicles and failed to recall the Vehicles.

37.     Jaguar failed to adequately research, design, test, and/or manufacture the Vehicles before warranting, advertising, promoting, marketing, distributing, selling and leasing the Vehicles as suitable and for use in an intended and/or reasonably foreseeable manner.

B.      **The Reasonable and Legitimate Expectations of
Plaintiffs and the Members of the Putative Class**

38.     Customers purchasing or leasing vehicles reasonably and legitimately
expect that those Vehicles and their features, including the Infotainment System, and key
vehicle functions it operates, would properly function for years.

39.     In purchasing or leasing their vehicles, Plaintiff and the other members of
the Class reasonably and legitimately expected their vehicles to be reliable, and to operate
in accordance with all of their intended purposes – including for the Infotainment System
not to malfunction.

40.     In purchasing or leasing their vehicles, Plaintiff and the other members of
the Class reasonably and legitimately expected that the Vehicles would be free from the
Defect.

41.     The existence of the Defect is a fact that would be considered material to a
reasonable consumer deciding whether to purchase or lease a Vehicle that was equipped
with an Infotainment System.

42.     Customers like Plaintiff and the other members of the Class reasonably
and legitimately expect and assume that a Vehicle's Infotainment System will function in
its intended manner and be free from defects.  Plaintiff and the other members of the
Class also reasonably and legitimately expect and assume that Jaguar will not sell or lease
vehicles with a known defect, and will disclose any such defects to consumers when they
learn of them. It was reasonable and legitimate for Plaintiff and the other members of the
Class to expect Jaguar not to actively and intentionally conceal problems from them –

9

such as the Defect described herein – to continually deny its existence, or that Jaguar would refuse to bear the repair costs that become necessary to correct the problems resulting from the Defect.

43.     Throughout the period that the Vehicles were sold and leased, Jaguar marketed, promoted and advertised the Vehicles' Infotainment System, and routinely touted the performance of its Vehicles including features such as the Infotainment System being dependable and making the driving experience more entertaining, and safer.

44.     In addition, Jaguar advertised the exacting and detailed testing it conducts on its Vehicles to ensure that they are free of defects once they are sent to the independent Jaguar dealerships.

45.     Plaintiff and the other members of the Class reasonably and legitimately expected the Vehicles and features of the Vehicles such as the Infotainment System to work properly.

46.     Plaintiff and the other members of the Class reasonably and legitimately expected Jaguar to disclose the existence of the Defect that was known to it at the time of sale or lease of the Vehicles.

47.     Plaintiff and the other members of the Class could not have discovered the latent Defect through any reasonable inspection of their vehicles prior to purchase or at any time thereafter.

48.     As a direct and proximate result of the Defect, the Infotainment System and key vehicle functions it operates in the Vehicles does not function as represented by Jaguar.  The resulting Vehicle failures from the Defect include, without limitation, failure

of the Infotainment System screen to appear on Vehicle start-up, rear camera failing to appear or to function as designed, front parking sensors failing to activate as designed, freezing of satellite radio, failure to recognize USB media, intermittent Bluetooth connectivity and Infotainment System remaining powered after Vehicle shut-down.

49.    As a direct and proximate result of the Defect, Plaintiff and the other members of Class have experienced failure of the Infotainment System in their vehicles, did not receive what they paid for, and have incurred actual damages.

50.    Had Plaintiff and other members of the Class known about the Defect while they were in the market for purchasing or leasing a vehicle, they would not have purchased or leased the Vehicles or, at the very least, would have paid less for them.

### C.    Jaguar's Awareness of the Defect

51.    Jaguar was aware of the Defect when it began warranting, advertising, promoting, marketing, distributing, selling and leasing the Vehicles, yet failed to take any remedial action. Rather Jaguar actively and intentionally concealed and failed to disclose the Defect from Plaintiff and the other members of the Class at the time of purchase or lease, and thereafter.

52.    Since at least 2015, Jaguar had knowledge of the Defect in the Vehicles. This knowledge was obtained through Jaguar's pre-manufacturing research and testing, pre-market testing procedures, complaints made to authorized dealers, complaints made directly to Jaguar, complaints made to the National Highway Transportation Safety Administration ("NHTSA"), testing conducted in response to those complaints, warranty and post-warranty claims, replacement part sales data, aggregate data from Jaguar's

11

dealers and other internal sources. The foregoing includes conducting testing on their vehicles' electrical systems, software systems, and related components, such as the Infotainment System, to verify that these components are free from defects and comply with Jaguar's design, manufacture and other specifications.

53.     Jaguar also knew, or reasonably should have known, of the Defect based upon the number of complaints it received from its dealerships and service shops. For instance, multiple departments at Jaguar interact with its dealerships and service shops in order to identify potentially widespread vehicle problems, including those related to its Vehicles' Infotainment Systems. These Jaguar departments collect and analyze data from the dealerships and service shops in order to identify any problems in its Vehicles. Moreover, Jaguar dictates when a repair is made under warranty (or when warranty coverage is requested). Service shops must provide Jaguar with detailed documentation of the in-warranty problems they encounter and the repair that is utilized, which include descriptions of the associated complaint, cause, and correction. For their part, dealerships and service shops are meticulous about providing this detailed information about in-warranty repairs to Jaguar because Jaguar will not pay the dealerships and service shops for the repair if sufficient detail is not provided.

54.     Jaguar also actively monitors the internet, including vehicle forums, as well as the NHTSA database to gather data regarding complaints made about Jaguar vehicles.  Further, Jaguar's customer relations division regularly receives and responds to customer calls, emails, and other correspondence concerning, *inter alia*, product defects.

Through these sources, Jaguar was made aware, or reasonably should have been made aware, of the Defect.

54. Numerous customer complaints demonstrate that Jaguar knew, or reasonably should have known, of the problems concerning the Defect, the costs associated with the necessary repairs, and how the defective condition affects its consumers.

56. Based on these and other complaints, Jaguar knew, or reasonably should have known, of the Defect at the time it sold or leased the Vehicles, and the potential danger it posed to consumers.

57. Jaguar was aware of the Defect when it began warranting, advertising, promoting, marketing, distributing, selling and leasing the Vehicles, yet failed to take any remedial action.

58. Yet, Jaguar has refused to address and rectify the Defect, and has failed and refused to reimburse its customers for the monies they were forced to expend, and are continually forced to expend, as a direct and proximate result of the Defect.  Jaguar has failed to implement a plan to address the Defect, and has instead manufactured, warranted, advertised, promoted, marketed, distributed, sold and leased subsequent models that contain the same or substantially similar Defect, which they actively and intentionally concealed.

59. Buyers, lessees and other owners of the Vehicles were without access to the information concealed by Jaguar as described herein, and therefore reasonably relied on Jaguar's representations and warranties regarding the quality, durability, and other

13

material characteristics of the Vehicles. Had these buyers and lessees not been purposely deceived by Jaguar regarding their vehicles and the known defects within them, Plaintiff and the other members of the Class would have paid less for their vehicles than the amounts they actually paid, or would not have purchased or leased the vehicles at all.

### D.  Jaguar's Warranty

60.     Jaguar issued warranties to each owner or lessee of the Vehicles.

61.     Under these warranties, Jaguar agreed to repair defects reported within four years or 50,000 miles.

62.     Jaguar instructs owners and lessees to bring their Vehicles to a Jaguar dealership for warranty repairs.

63.     Many owners and lessees have presented the Vehicles to Jaguar dealerships with complaints related to the Defect.   Jaguar has evaded its warranty obligations by failing to inform owners and lessees of the Vehicles of the existence of the Defect.

64.     Owners and lessees of the Vehicles have incurred, and will continue to incur, expenses for the diagnosis and repair of the Defect, despite such defect having been contained in the Vehicles when manufactured, distributed, advertised, marketed, and warranted by Jaguar.

### E.  Plaintiff Quesada

65.     At all relevant times, Defendant was engaged in the business of marketing, advertising, distributing, selling, and warranting automobiles, other motor vehicles and motor vehicle components in Florida and throughout the United States of America.

14

66.     On or about March 30, 2016, Plaintiff leased a new 2016 Jaguar XF from Warren Henry Auto Group ("Warren Henry"), a Jaguar authorized dealership, for a 36 month lease with a monthly payment of $799.

67.     Prior to his lease of the vehicle, Plaintiff spoke with employees of Warren Henry regarding the vehicle.  The employees of Warren Henry made representations to him about the vehicle regarding the benefits of the vehicle, including the Infotainment System and, specifically, the satellite radio feature. They represented to Plaintiff that the Infotainment System, and satellite radio feature, was dependable, reliable, and functioned properly.

68.     None of the representations received by Plaintiff contained any disclosure relating to the Defect. Had Warren Henry's employees disclosed the existence of the Defect, Plaintiff would not have leased the vehicle or would have paid significantly less for leasing the vehicle.

69.     From the onset of Plaintiff's lease, Plaintiff began experiencing problems with his vehicle's Infotainment System and particularly the satellite radio feature and parking sensors.

70.     On multiple occasions and specifically on October 28, 2016, and January 12, 2017, Plaintiff took his vehicle to Warren Henry for service and updates to his vehicle.  None of the services and updates performed remedied the Defect.

71.     At all times, Plaintiff and the other members of the Class drove their Vehicles and attempted to use the Infotainment System in a foreseeable manner, and in the manner in which they were intended to be used.

72.     The Defect was never remedied, and to this day Plaintiff's vehicle and the Vehicles still suffer from the Defect.

73.     On or about January 12, 2017 and following a service appointment, Plaintiff inquired with Warren Henry about the Defect, given that it had not been cured, and Warren Henry deceitfully advised that the Defect "could not be replicated," and failed to disclose that Jaguar was aware of the Defect and that it had no solution for same.

74.     On February 14, 2017, Plaintiff called Warren Henry to inquire as to the Infotainment System and the Service Manager for Warren Henry advised there was no remedy for the Defect, and instructed Plaintiff not to bring the vehicle to Warren Henry for such Defect.

75.     In an email communication dated February 17, 2017, the Service Manager at Warren Henry advised Plaintiff "at this time there is no other solution I have to wait until they resolve that issue. I wish I had an answer for you but they are actively working on a solution for it." *See* Exhibit A, 2/17/17 Emails to and from Plaintiff and Warren Henry.

76.     Interestingly, on February 21, 2017, Plaintiff received a letter from Jaguar, signed by Jaguar's President and CEO and Jaguar's Vice President of Customer Service, dated February 13, 2017 (the "Jaguar Letter").  *See* Exhibit B, Jaguar Letter to Plaintiff dated 2/13/17.

77.     In the Jaguar Letter, Jaguar stated that it was "conducting this no-charge Enhancement   Program   for   owners   of   2016   and   2017   model   year   Jaguar

vehicles….Through a single service visit, this program provides the opportunity to enhance the functionality and usability of your Jaguar vehicle…."

78.    In the Jaguar Letter, the first "improvement" identified was the "Infotainment software and/or hardware updates to improve system reliability and other enhancements." Clearly, Jaguar is fully aware of the Defect and its impact on the functionality and usability of the Vehicles.

79.    On February 22, 2017, Plaintiff again communicated with the Service Manager at Warren Henry, and provided him a copy of the Jaguar Letter, regarding the improvements to enhance "functionality and usability," and to determine whether these would correct the Defect. *See* Exhibit C 2/22/17 Emails to and from Plaintiff and Warren Henry.

80.    On that same day, the Service Manager for Warren Henry replied that "Your car is up to date all have been done….;" meaning that the Defect was not corrected, and that Plaintiff could not bring in the vehicle to correct the Defect. *See* Exhibit C.

81.    There are no material differences between Jaguar's actions and practices directed to Plaintiff and Jaguar's actions and practices directed to the Class.

## VI.    CLASS ACTION ALLEGATIONS

### A. Class Definition

82.    Plaintiff brings this action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other persons similarly situated. Plaintiff seeks to represent the following two classes:

17

**(1) Nationwide class**

All persons or entities in the United States who own, lease, or have owned or have leased a 2016 or 2017 Jaguar XE, XF, XJ, F-Pace and/or any other Jaguar models containing an Infotainment System. Excluded from this class are Defendant, their affiliates, subsidiaries, agents, board members, directors, officers and/or employees. Also excluded from this class are all persons who have had their vehicle repurchased or "bought back" by Defendant (whether the buy-back was required by law or was solely pursuant to agreement).

**(2) Florida Subclass with Plaintiff as the Class Representative**

All persons or entities in the State of Florida who own, lease, or have owned or have leased a 2016 or 2017 Jaguar XE, XF, XJ, F-Pace and/or any other Jaguar model containing an Infotainment System.   Excluded from this class are Defendant, their affiliates, subsidiaries, agents, board members, directors, officers and/or employees.   Also excluded from this class are all persons who have had their vehicle repurchased or "bought back" by Defendant (whether the buy-back was required by law or was solely pursuant to agreement).

83.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

84.    Defendant subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

**B. <u>Numerosity</u>**

85.    The proposed classes are so numerous that joinder of all members would be impracticable.  The Class is believed to include tens of thousands of members.  The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Defendant that own, lease or owned and leased the Vehicles.  The precise number of Class members number at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical

18

for each member to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

## C. Commonality

86.     There are questions of law and fact that are common to Plaintiff's and Class members' claims. These common questions predominate over any questions that go particularly to any individual member of the Classes. Among such common questions of law and fact are the following:

a.      Whether the Vehicles suffer from the Defect;

b.      Whether the defective nature of the Infotainment System constitutes a material fact;

c.      Whether Jaguar knew, or reasonably should have known, that the Vehicles were defectively designed, manufactured, marketed, distributed, advertised, warranted, sold and leased;

d.      Whether Jaguar knew or reasonably should have known of the defects relating to the Infotainment System before it sold and/or leased the Vehicles to Plaintiff and the other members of the Class;

e.      Whether Jaguar had a duty to disclose the Defect to Plaintiff and the other members of the Class;

f.      Whether Jaguar actively and intentionally misrepresented, concealed, failed to disclose and/or omitted material information in its marketing, advertising, sale and lease of the Vehicles concerning the existence of the Defect;

g.      Whether Plaintiff and the other members of the Class are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

h.      Whether Jaguar should be declared financially responsible for notifying all members of the Class of the Defect in the Vehicles, and for the costs and expenses of repairing and/or replacing the defective Infotainment System;

19

i.      Whether Jaguar is obligated to inform members of the Class of their right to seek reimbursement for having paid to diagnose, repair and/or replace the Infotainment System due to the Defect;

j.      Whether Jaguar violated the consumer protection laws of Florida;

k.      Whether Jaguar's conduct violates warranty laws, and other laws as asserted herein;

l.      Whether, as a result of Jaguar's omissions, concealments and/or misrepresentations of material facts related to the Defect, Plaintiff and the other members of the Class have suffered ascertainable losses, and whether Plaintiff and the other members of the Class are entitled to monetary damages and/or other remedies, and if so the nature of any such relief;

m.      Whether Jaguar's acts and/or omissions entitle Plaintiff and the other members of the Class  to attorneys' fees, prejudgment interest and cost of suit; and

n.      Whether Jaguar was unjustly enriched by its acts and/or omissions at the expense of Plaintiff and the other members of the Class.

### D. Typicality

87.     Plaintiff is a member of the Classes he seeks to represent.  Plaintiff's claims are typical of the respective classes' claims because of the similarity, uniformity, and common purpose of Defendant's unlawful conduct. Each Class member has sustained, and will continue to sustain damages in the same manner as Plaintiff as a result of Defendants' wrongful conduct.

### E. Adequacy of Representation

88.     Plaintiff is an adequate representative of the Classes he seeks to represent and will fairly and adequately protect the interests of the Classes. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between

20

Plaintiff and the unnamed Class members. Plaintiff anticipates no difficulty in the management of this litigation as a Class action.

89.    To prosecute this case, Plaintiff has chosen the undersigned law firm, which is very experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### F. Requirements of Fed. R. Civ. P. 23(b)(3)

90.    The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiff and the unnamed Class members are based on the Defect and Defendant's deceptive and egregious actions enumerated herein.

91.    Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

92.    As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class, as is the case at bar, common questions will be held to predominate over individual questions.

### G. Superiority

93.    A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

> (a) Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside all across the Nation;
>
> (b) Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what

any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

## H.  Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

94.    Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

95.    Defendant has acted or failed to act in a manner generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## VII. EXPRESS AND IMPLIED WARRANTIES

96.    For each Vehicle sold by Jaguar, an express written warranty was issued which covered the Vehicle, including but not limited to the Infotainment System, and Jaguar warranted the Vehicle to be free of defects in materials and workmanship at the time of purchase or lease.

97.     Pursuant to its express and written warranties, Jaguar warranted the Vehicles, including the Infotainment System of the Vehicles, to be free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first four years or 50,000 miles, whichever came first.

98.     Jaguar has sold or leased the Vehicles to the Class under implied warranties of merchantability and fitness for a particular purpose.  Jaguar impliedly warranted the Vehicles to be merchantable, fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in non-defective condition for use by their owners or lessees for the ordinary purpose for which they were intended and to have use of all the features in the Vehicles.  Jaguar is under a duty to design, construct, manufacture, inspect, and test the Vehicles to ensure all features function as they are designed to function.

99.     Jaguar breached its warranties for the Vehicles as a result of the latent defects in the Infotainment System, denying the defect in the Infotainment System when confronted with complaints of its features not functioning; failing to repair the Infotainment System as warranted; and otherwise inadequately repairing the Defect through ineffective software updates.

100.    In breach of Jaguar's warranties, the Vehicles are defective, unfit for the ordinary purposes for which they are intended to be used and not merchantable.

## COUNT I
## BREACH OF EXPRESS WARRANTIES

101.     Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference allegations 1-100 as though fully set forth herein.

102.     This claim is for Breach of Express Warranties and is brought on behalf of Plaintiff and the Nationwide Class.

103.     Jaguar provided all purchasers and lessees of the Vehicles with the express warranties described herein, which became part of the basis of the bargain.

104.     Accordingly, Jaguar's warranties are express under state law.

105.     The components that must be repaired and/or replaced as a result of the Defect, as well as the other damages caused as a result of the Defect, as described herein, are covered by the express warranties Jaguar provided all purchasers and lessees of the Vehicles.

106.     Plaintiff and the other members of the Nationwide Class have complied with all obligations and requirements under the Vehicles' express warranties, or are otherwise excused from performance of said obligations and requirements.

107.     Jaguar breached these warranties by selling and leasing Vehicles which they knew, or reasonably should have known, contained the Defect and required repair or replacement within the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods.

108.     Plaintiff notified Jaguar of the breach within a reasonable time, and/or was not required to do so because affording Jaguar a reasonable opportunity to cure its breach of written warranty would have been futile.  Jaguar knew of the defect and yet has chosen to conceal it and to not comply with its warranty obligations.

109.     As a direct and proximate result of Jaguar's breach of the Vehicles' express warranties, Plaintiff and the other members of the Nationwide Class were damaged by, among other things, being forced to expend monies – and will continue to be forced to expend monies – to repair and/or replace their vehicles' components, and diminution in value of their vehicles.

110.     Jaguar's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Jaguar's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the Defect.

111.     The time limits contained in Jaguar's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Nationwide Class. Among other things, Plaintiff and the other members of the Nationwide Class had no meaningful choice in determining these time limitations the terms of which unreasonably favored Jaguar.  A gross disparity in bargaining power existed between Jaguar and Plaintiff and the Nationwide Class, and Jaguar knew or should have known that the Vehicles were defective at the time of sale.

112.    Plaintiff and members of the Nationwide Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Jaguar's conduct described herein.

WHEREFORE, Plaintiff, on behalf of himself and all similarly situated Nationwide Class members, seeks compensatory damages allowable by law, attorney's fees, costs, pre- and post-judgment interest, restitution, the repair of all Vehicles, replacement of all Vehicles, the refund of money paid to own or lease all Vehicles and any other relief to which Plaintiff and the Nationwide Class may be entitled.

## COUNT II
## BREACH OF IMPLIED WARRANTY

113.    Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference allegations 1-100 as though fully set forth herein.

114.    This claim is for Breach of an Implied Warranty and is brought on behalf of Plaintiff and the Nationwide Class.

115.    Jaguar was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Vehicles.  Jaguar knew, or reasonably should have known, of the specific use for which the Vehicles were purchased or leased.

116.    Jaguar provided Plaintiff and the other members of the Nationwide Class with an implied warranty of merchantability that the Vehicles, and any components thereof, are merchantable and fit for the ordinary purposes for which they were sold.

117.    Jaguar impliedly warranted that the Vehicles were of merchantable quality and fit for such use. This implied warranty of merchantability included, among other

26

things: (i) a warranty that the Vehicles, and their Infotainment Systems, were manufactured, supplied, distributed, sold and/or leased by Jaguar were reliable, free from defect, and would not experience failure; and (ii) a warranty that the Vehicles and their Infotainment Systems, would be fit for their intended use while the vehicles were being operated.

118.   Contrary to the applicable implied warranties of merchantability, the Vehicles were not fit for their ordinary and intended purpose and failed to provide Plaintiff and the other members of the Nationwide Class with transportation that included the use of all the features of the Vehicles.

119.   Defendant breached the Vehicles' implied warranty of merchantability by selling or leasing Plaintiff and the other members of the Nationwide Class Vehicles, and/or components thereof, that are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Vehicles suffered from the Defect at the time of sale rendering the Vehicles unfit for their particular purpose of providing safe and reliable transportation with the use of all the features of the Vehicles.

WHEREFORE, Plaintiff, on behalf of himself and all similarly situated Nationwide Class members, seeks compensatory damages allowable by law, attorney's fees, costs, pre- and post-judgment interest, restitution, the repair of all Vehicles, replacement of all Vehicles, the refund of money paid to own or lease all Vehicles and any other relief to which Plaintiff and the Nationwide Class may be entitled.

## COUNT III
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. §§ 2301, *ET SEQ.*

120.   Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference allegations 1-100 as though fully set forth herein.

121.   This claim is for violation of the Magnuson-Moss Warranty Act and is brought on behalf of Plaintiff and the Nationwide Class.

122.   Plaintiff and other members of the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

123.   Jaguar is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§2301(4)-(5).

124.    The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

125.   Jaguar's express warranty is a "written warranty" within the meaning of 15U.S.C. § 2301(6).

126.   Jaguar breached the express warranty by selling and leasing vehicles which they knew, or reasonably should have known, contained the Defect and required repair or replacement within the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods.

127.   Jaguar's breach of the express warranty deprived the Plaintiffs and the other members of the Nationwide Class of the benefits of their bargains.

128.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

129.    Jaguar has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiff and other members of the Nationwide Class brought their vehicles in for diagnoses and repair of the Defect.

130.    As a direct and proximate result of Jaguar's breach of written warranty, Plaintiff and other members of the Nationwide Class sustained damages and other losses in an amount to be determined at trial.  Jaguar's conduct damaged Plaintiff and other members of the Nationwide Class who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

WHEREFORE, Plaintiff, on behalf of himself and all similarly situated Nationwide Class members, seeks compensatory damages allowable by law, attorney's fees, costs, pre- and post-judgment interest, restitution, the repair of all Vehicles, replacement of all Vehicles, the refund of money paid to own or lease all Vehicles and any other relief to which Plaintiff and the Nationwide Class may be entitled.

## COUNT IV
## UNJUST ENRICHMENT

131.    Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference allegations 1-100 as though fully set forth herein.

29

132.    This claim is for Unjust Enrichment and is brought on behalf of Plaintiff and the Nationwide Class.

133.    Defendant's acts and/or omissions allowed it to gain millions of dollars in profits that would not have been gained, but for their wrongful conduct.

134.    Plaintiff and the other members of the Nationwide Class paid amounts to purchase and lease their vehicles, which they would not otherwise have paid had Jaguar informed them of the presence of the Defect.

135.    The payment of money to purchase and lease their vehicles by Plaintiff and the other members of the Nationwide Class conferred a benefit to Jaguar.

136.    Jaguar voluntarily accepted and retained the benefit.

137.    Jaguar has been unjustly enriched by the sale and lease of the Vehicles containing the Defect.

138.    Plaintiff and the other members of the Nationwide Class suffered damages as a result.

139.    The circumstances are such that it would be inequitable for Jaguar to retain the benefit of the profits that it unfairly has obtained by selling or leasing the Vehicles to Plaintiff and the other members of the Nationwide Class.

140.    Plaintiff and the other members of the Nationwide Class do not have an adequate remedy at law.

WHEREFORE, Plaintiff on behalf of himself and all similarly situated Nationwide Class members, demand an award against Jaguar in the amounts by which it

has been unjustly enriched at Plaintiff's and the Nationwide Class members' expense, and such other relief as this Court deems just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

141.    Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference allegations 1-100 as though fully set forth herein.

142.    This claim is for Tortious Interference with a Business Relationship and is brought on behalf of Plaintiff and the Nationwide Class.

143.    Plaintiff and the Nationwide Class have advantageous business and contractual relationships with the finance company that financed their purchase and/or lease of the Vehicles.  Plaintiff and the Nationwide Class have legal rights under these purchase/lease finance agreements.  For example, Plaintiff and the Nationwide Class have a right to not be charged a fee for features that do not function, like the Infotainment Systems in the Vehicles.

144.    Jaguar had knowledge of these purchase/lease finance agreements and the advantageous business and contractual relationships between Plaintiff and the Nationwide Class with their respective finance company.  Jaguar was not a party to the finance agreements, nor were they third-party beneficiaries of the finance agreements.

145.    Jaguar intentionally and unjustifiably interfered with Plaintiff's and the Nationwide Classes' rights under the finance agreements, as described above, causing them damages for their having to pay a fee for a feature that does not function.

31

146.    Plaintiff and the other members of the Nationwide Class reserve the right to amend this Count to assert punitive damages based upon a showing as required under applicable law.

WHEREFORE, Plaintiff on behalf of himself and all similarly situated Nationwide Class members, seek a judgment in their favor against Jaguar for the actual damages suffered by them as a result of their tortious interference.  Plaintiff also seeks all costs of litigating this action, including attorneys' fees.

## COUNT VI
## BREACH OF EXPRESS WARRANTIES UNDER FLORIDA COMMON LAW

147.    Plaintiff, individually and on behalf of the Florida Subclass incorporates by reference allegations 1-100 as though fully set forth herein.

148.    This is a claim for Breach of Express Warranties under Florida Common Law brought on behalf of Plaintiff and the Florida Subclass.

149.    For each of the Vehicles sold by Jaguar, an express written warranty was issued that covered the vehicle, including but not limited to the Infotainment System, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

150.    Jaguar breached its warranties by offering for sale and selling defective vehicles that were by design and construction defective, thereby subjecting the owners/lessees of the Vehicles purchased or leased to damages and risks of loss.

151.    Jaguar's breach of its express warranties proximately caused the Plaintiff and the Florida Subclass damages.

32

WHEREFORE, Plaintiff on behalf of himself and the Florida Subclass, seek compensatory damages allowable by law, attorney's fees, costs, , pre- and post-judgment interest, restitution, the repair of all Vehicles, replacement of all Vehicles, the refund of money paid to own or lease all Vehicles and any other relief to which Plaintiff and the Florida Subclass may be entitled.

## COUNT VII
## BREACH OF IMPLIED WARRANTY UNDER FLORIDA COMMON LAW

152.  Plaintiff, individually and on behalf of the Florida Subclass incorporates by reference allegations 1-100 as though fully set forth herein.

153.  This is a claim for Breach of Implied Warranty Under Florida Common Law and brought on behalf of Plaintiff and the Florida Subclass.

154.  Jaguar impliedly warranted that the Vehicles and any components thereof, which it designed, manufactured, sold, or leased to Plaintiffs and members of the Florida Subclass, were merchantable and fit for their ordinary use, not otherwise defective, and would properly function.

155.  Because the Vehicles are equipped with the defective Infotainment System, the Vehicles purchased or leased and used by Plaintiff and the Florida Subclass were not merchantable and fit for their ordinary use, free from defect, and properly functioning.

156.  Jaguar breached the implied warranty of merchantability in the sale or lease of the Vehicles to Plaintiff and the Florida Subclass in that the Vehicles were not merchantable and fit for their ordinary use, free from defect, and properly functioning.

33

157.    As a direct and proximate result of Jaguar's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and members of the Florida Subclass suffered damages.

WHEREFORE, Plaintiff on behalf of himself and the Florida Subclass, seek compensatory damages allowable by law, attorney's fees, costs, pre- and post-judgment interest, restitution, the repair of all Vehicles, replacement of all Vehicles, the refund of money paid to own or lease all Vehicles and any other relief to which Plaintiff and the Florida Subclass may be entitled.

**COUNT VIII**
**VIOLATION OF FLORIDA'S DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT, FLA.STAT. §§ 501.201, _ET SEQ._**

158.    Plaintiff, individually and on behalf of the Florida Subclass, incorporates by reference allegations 1-100 as though fully set forth herein.

159.    This is a claim for violation of the Florida Deceptive and Unfair Trade Practices Act and brought on behalf of Plaintiff and the Florida Subclass.

160.    FDUTPA, section 501.201, _et seq_., Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

161.    Plaintiff and the Florida Subclass are "consumers" as that term is defined in section 501.203(7), Florida Statutes.

162.    Jaguar has engaged in, and continues to engage in, unconscionable acts or practices and has engaged in unfair or deceptive acts in the conduct of its trade and/or commerce in the State of Florida.

34

163.    The policies, acts, and practices alleged herein were intended to result and did result in the payment for the purchasing or leasing of the Vehicles that would not have otherwise been purchased or leased, or would have been purchased or leased for far less.

164.    Plaintiff and the Florida Subclass have sustained damages as a direct and proximate result of Jaguar's unfair and unconscionable practices. Section 501.211(2), Florida Statutes, provides Plaintiff and the Florida Subclass a private right of action against Jaguar and entitles them to recover their actual damages, plus attorneys' fees and costs.

165.    Plaintiff and the Florida Subclass have suffered and will continue to suffer irreparable harm if this Defendant continues to engage in such deceptive, unfair, and unreasonable practice.

WHEREFORE, Plaintiff, on behalf of himself and the Florida Subclass, demand judgment against Jaguar for damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all similarly situated individuals, demand judgment against Defendant as follows:

1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) of the Federal Rules of Civil

Procedure and declaring Plaintiff and his counsel to be representatives of the Nationwide Class and the Florida Subclass sought in this complaint;

2)      All recoverable compensatory and other damages sustained by Plaintiff and the other members of the Nationwide Class and the Florida Subclass;

3)      Actual and/or statutory damages for injuries suffered by Plaintiff and the other members of the Nationwide Class and the Florida Subclass in the maximum amount permitted by applicable law;

4)      Restitution and disgorgement of all amounts obtained by Jaguar as a result of its misconduct, together with interest thereon, from the date of payment, to the victims of such violations;

5)      An Order: (a) requiring Jaguar to immediately cease its wrongful conduct, as set forth above; (b) enjoining Jaguar from further wrongful practices concerning the distribution, advertisement, marketing, warranting, sale and lease of the Vehicles; (c) requiring Jaguar to make all repairs and/or replacements necessitated as a result of the Defect in the vehicles purchased or leased by Plaintiff and the other members of the Nationwide Class and Florida Subclass; (d) requiring Jaguar to refund to Plaintiff and all members of the Nationwide Class and the Florida Subclass the funds they were forced to expend on repairs and/or replacements as a result of the Defect; and (e) a declaration that Jaguar is financially responsible for notifying all members of the Nationwide Class and the Florida Subclass of the defective nature of the Infotainment System recalling the Vehicles and/or extending their warranties to cover the Defect;

6)      Awarding Plaintiff and the Florida Subclass damages, injunctive relief, declaratory relief, attorneys' fees, and costs under FDUTPA;

7)      Awarding damages sustained by Plaintiff and the other members of the Nationwide Class and the Florida Subclass as a result of Jaguar's tortious interference with the purchase/lease finance agreements;

8)      Finding that Jaguar has been unjustly enriched and requiring them to refund all unjust benefits to Plaintiff and the other members of the Nationwide Class and the Florida Subclass, together with pre- judgment interest;

9)      Awarding Plaintiff and the other members of the Nationwide Class and the Florida Subclass costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Classes' counsel and experts, and reimbursement of expenses;

10)     Statutory pre-judgment and post-judgment interest on the Class damages;

11)     Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

12)     Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, the Nationwide Class, and the Florida Subclass herein demands a trial by jury on all issues so triable.

Dated: February 27, 2017

Respectfully submitted,

/s  Emilia A. Quesada_____
Emilia A. Quesada
Florida Bar No. 092045
equesada@smgqlaw.com
Raul L. Perez, Esq.
Florida Bar No. 029400
rperez@smgqlaw.com
Sanchez-Medina, Gonzalez, Quesada, et al.
201 Alhambra Circle, Suite 1205
Coral Gables, Florida 33134
Telephone:  (305) 377-1000
Facsimile:  (855) 898-1359
  *Counsel for Plaintiff*